UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WERNER WOELLECKE, et al.,

    Plaintiffs,                              Civil Action No. 19-CV-12430

vs.                                         HON. BERNARD A. FRIEDMAN

FORD MOTOR COMPANY, et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**
**AND**
**ADMINISTRATIVELY CLOSING CASE**

This matter is presently before the Court on the motion of defendant Ford Motor Company to compel arbitration or to dismiss the second amended complaint ("SAC') [docket entry 35]. Plaintiffs have responded and defendant has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the reasons stated below, the Court shall grant the motion to compel arbitration.

Plaintiffs Werner Woellecke and Terry Haggerty are former salaried employees of defendant Ford Motor Company ("Ford"). In their Second Amended Complaint ("SAC"), plaintiffs allege that in early 2019 Ford selected them, along with approximately 800 other managers, for involuntary termination pursuant to the "fourth wave" of Ford's Salaried Involuntary Reduction Process ("SIRP"). SAC ¶ 59. Both plaintiffs were managers who had worked for Ford for 27.5 years. SAC ¶¶ 83, 107. At the time, Woellecke was 50 years old; Haggerty was 53. *Id.* ¶¶ 83, 108. Plaintiffs allege that they "were deliberately denied ERISA 'Bridging' benefits and unlawfully targeted for separation in violation of ERISA, 29 U.S.C.

§1001 et seq., and state and federal age discrimination laws." *Id.* at 2. Bridging, plaintiffs allege, is Ford's practice of either delaying the termination date or adding years to the age and/or years of service to a retiring employee who is close to achieving a pension "milestone" so that the employee can retire with the higher level of benefits that come with that milestone. *Id.* ¶ 37-38. In plaintiffs' cases, if Ford had allowed them to work an additional 2.5 years or if it had added 2.5 years to their years of service, they would have finished their careers with 30 years of service, in which event their pensions would have been significantly more valuable.[1] Ford denied both plaintiffs' requests for such bridging. *Id.* ¶¶ 99, 113. But "[s]ome Managers separated in the 2019 SIRP were secretly granted informal or formal Bridging." *Id.* ¶ 40.

In March and May 2019, respectively, Woellecke and Haggerty signed a document entitled Salaried Involuntary Reduction Process [("SIRP")] Waiver and Release Agreement – Group Program, stating that they were "elect[ing] SIRP Benefits in exchange for this Agreement." Def.'s Mot. to Dismiss, Exs. A (Woellecke) and B (Haggerty). This document contains the following paragraph concerning arbitration:

> **12. Dispute Resolution and Class Action Waiver**
>
> a) In the event that any dispute arises about the validity, interpretation, effect or alleged violations of this Agreement, about my employment with the Company, or

---

[1] Plaintiffs allege that "[t]he lump sum value of Woellecke's Ford pension with 27.5 years of service credits is $509,273. If Ford had provided Woellecke with a bridge to a 30-year service credit the lump sum value of his Ford pension would be in excess of $1.2 million." SAC ¶ 106. They further allege that "Haggerty's lump sum pension, with 53 years of age and 27.5 years of service, was valued at $865,000. If allowed by the Company to work until September 1, 2020, at age 55, the lump sum value of his pension was $1.633 million. If allowed by the Company to work until November 1, 2021 with 30 years of service, the lump sum value of the pension would be $1.890 million." *Id.* ¶ 110.

about any matter that may arise between me and the Company in the future (other than claims for benefits under SIRP, SISP, or any other Employee Benefit Plan), the parties agree to submit the dispute to final and binding arbitration in Wayne County, Michigan . . . .

b) The arbitration shall have the authority to resolve all arbitrable claims with finality, in accordance with the AAA rules. The arbitrator shall have the exclusive authority to resolve any disputes about whether a claim is arbitrable, except that only a civil court of competent jurisdiction may resolve a dispute regarding the scope or enforceability of Paragraph 12©. The arbitrator will not have authority or jurisdiction to decide class certification or representative class issues.

c) **Class Action Waiver.** I shall not institute or participate in, and the arbitrator shall not have the authority to hear an arbitrable dispute on a class, collective, consolidated, or representative basis, nor shall the arbitrator have the authority to grant class-wide relief. . . . *<u>I understand that both Ford and I are waiving our rights to bring (or join, participate, or intervene in) any claim, controversy, or dispute covered by this arbitration provision as a class, collective, or other representative action.</u>* . . .

If both (1) the dispute is filed as a class, collective, or representative action and (2) a court find the class action waiver, or a portion thereof, unenforceable, then the parties agree that any claims as to which this class action waiver are unenforceable shall be resolved by arbitration prior to litigation of the claims to which the class action waiver was deemed unenforceable. . . .

\*   \*   \*

e) Notwithstanding the agreement to arbitrate as set forth in this Paragraph, the parties shall have the right, before, during or after any arbitration proceeding, to obtain injunctive relief available in a court of competent jurisdiction under applicable statutes and court rules. . . . The institution of any suit permitted by this paragraph shall not constitute a waiver of the agreement to arbitrate as set forth in this Paragraph.

3

> f) The agreement to arbitrate as set forth in this Paragraph does not apply to any claim regarding the provision of benefits under SIRP, SISP, or any other Employee Benefit Plan (the "Plan"). **In order to make a claim for benefits under any Plan, I understand that I must first exhaust my administrative remedies** . . . .

(Emphasis in original.) Paragraph 2 of this Agreement is a comprehensive release "[i]n consideration of the SIRP Benefits" of all "claims of any kind . . . that I may have . . . against Ford Motor Company." Paragraph 3 of this Agreement exempts from this release "any claims for benefits under SIRP, SISP or any other Employee Benefit Plan."

The gist of plaintiffs' complaint is that "Defendants fraudulently induced Plaintiffs to execute an unconscionable release and waiver of claims in exchange for enhanced severance in lieu of otherwise minimal severance benefits." SAC at 4. Plaintiffs allege that Ford fraudulently concealed their eligibility for bridging, neglected to inform them that they could appeal the denial of their requests for bridging, and selected them for termination in order to prevent them from achieving their 30-year service milestones. *Id.* at 3-4. Plaintiffs allege that they were entitled to bridging under a provision of Ford's Select Retirement Plan ("SRP"), but that they were unaware of this entitlement because Ford concealed its existence, denied plaintiffs' request for bridging, and neglected to inform plaintiffs that they had the right to appeal the decision denying their request.

The SAC asserts thirteen claims. Count I seeks a declaration that this Court has jurisdiction over plaintiffs' claims, i.e., that their "excluded claims for ERISA benefits" are not subject to the arbitration clause. Count II seeks a declaration that the general release and class action waiver is unenforceable. Count III seeks a declaration that defendants violated ERISA's prohibition of interference with ERISA rights, or with the attainment of such rights,

4

reinstatement, and an injunction directing defendants to grant plaintiffs bridging rights. Count IV seeks a declaration that defendants violated the anti-cutback rule of ERISA, that the 2017/2018 amendments to the SRP limiting eligibility are void, and that plaintiffs' bridging rights have vested. Count V seeks a declaration that defendants violated ERISA's notice requirements and that the 2017/2018 amendments to the SRP are void due to lack of proper notice. Count VI seeks a declaration that defendants violated ERISA's prohibition of "partial termination" of a benefit plan. Count VII claims that defendants breached their fiduciary duty under ERISA by denying plaintiffs their bridging benefits and concealing their eligibility for such benefits; plaintiffs seek an injunction ordering that benefits be paid prospectively. Count VIII seeks recision of the release based on equitable estoppel. Counts IX through XII assert age discrimination claims, and Count XIII is an ERISA claim for unpaid benefits.

In the motion now before the Court, Ford, the only served defendant, seeks an order compelling plaintiffs to arbitrate their claims or, alternatively, dismissing the SAC for failure to state a claim. Plaintiffs oppose both prongs of this motion. Because the Court is persuaded that this case must proceed to arbitration, the Court need not address whether the SAC states claims upon which relief can be granted.

Regarding arbitration,

> [t]he Federal Arbitration Act (FAA) provides that a written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable, including, first, whether the parties agreed to arbitrate; and, second, whether the specific dispute falls within the substantive scope of that agreement. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th

Cir. 2003).

*Moran v. Svete*, 366 F. App'x 624, 629 (6th Cir. 2010).

In the present case, the parties plainly "agreed to arbitrate," as evidenced by ¶ 12(a) of the SIRP Waiver and Release Agreement, but their agreement is limited. The parties agreed to arbitrate "any dispute . . . about . . . this Agreement, about my employment with the Company, or about any matter that may arise between me and the Company in the future (other than claims for benefits under SIRP, SISP, or any other Employee Benefit Plan)." The parenthetical would appear to exempt the claims plaintiffs present in Counts I through VIII and XIII, as these claims seek bridging benefits to which they believe they are entitled under the SRP. However, in ¶ 12(b) of the SIRP Waiver and Release Agreement, the parties *also* agreed that "[t]he arbitrator shall have the exclusive authority to resolve any disputes about whether a claim is arbitrable," except disputes "regarding the scope or enforceability of Paragraph 12©," which the parties agreed to allow any court of competent jurisdiction to resolve.

As the Sixth Circuit has held, an agreement to arbitrate the arbitrability of disputes is enforceable on the same footing as an any other arbitration agreement:

> Generally, "whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). "[P]arties may," however, "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 139 S. Ct. at 529 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)). Known as a "delegation provision," "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration

6

> agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70, 130 S.Ct. 2772. There is a "caveat" to enforcing delegation provisions: we "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." Id. at 69 n.1, 130 S.Ct. 2772 (internal quotation marks and brackets omitted).

*In re: Automotive Parts Ligitation*, 951 F.3d 377, 381-82 (6th Cir. 2020).

In the present case, the parties agreed to arbitrate not only the merits of any arbitrable disputes but also "any disputes about whether a claim is arbitrable, except . . . a dispute regarding the scope or enforceability of Paragraph 12©." As is apparent from their extensive briefing, in support of and opposing defendant's motion to compel arbitration, the parties vigorously dispute the arbitrability of plaintiffs' claims, with defendant arguing that all of them must be arbitrated and plaintiffs arguing that all of them are exempted from the agreement because they are claims for benefits and/or permitted claims for injunctive relief. As this dispute is clearly one concerning "whether a claim is arbitrable," the matter must be resolved by the arbitrator, as it is the arbitrator to whom the parties have delegated "the exclusive authority" to decide whether disputes are subject to their agreement. Waiver and Release Agreement ¶ 12(b). Accordingly,

IT IS ORDERED that defendant's motion to compel arbitration is granted. The parties must proceed to arbitration in accordance with ¶ 12 of their agreement. Once the arbitrator determines which, if any, of plaintiffs' claims are arbitrable, he/she shall proceed to decide those claims.

IT IS FURTHER ORDERED that the Clerk of Court close this case for administrative purposes.  If the arbitrator determines that any of plaintiffs' claims are not arbitrable, plaintiffs may so notify this Court, and in that event the matter will be reopened and the nonarbitrable claims will be litigated.

                                                s/Bernard A. Friedman
                                                BERNARD A. FRIEDMAN
Dated:  November 9, 2020            SENIOR UNITED STATES DISTRICT JUDGE
        Detroit, Michigan